UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE HILLER COMPANIES, INC.                          CIVIL ACTION
AND AGCS MARINE INSURANCE
COMPANY

VERSUS                                                         NO. 20-2647

WOOD GROUP PSN, INC., ET AL.               SECTION "R" (2)

## ORDER AND REASONS

Before the Court is defendant Helis Oil & Gas Company, L.L.C.'s (Helis) motion to dismiss.[1]  Plaintiffs oppose the motion.[2]  Because plaintiffs fail to state a claim for breach of contract against Helis, the Court grants the motion.

## I.    BACKGROUND

This case is a contract dispute arising out of a personal injury action litigated in state court.  Plaintiffs are The Hiller Companies, Inc. (Hiller) and Hiller's alleged insurer, AGCS Marine Insurance Company (AGCS).[3]

---

[1]     R. Doc. 22.
[2]     R. Doc. 23.
[3]     R. Doc. 12 at 1, 10 ¶¶ 22-23.

Defendants are Helis, Wood Group PSN, Inc. (Wood Group), and Wood Group's alleged insurer, ACE American Insurance Company (ACE).[4]

## A.     State Court Proceedings

Plaintiffs allege that, on or about April 14, 2012, Hiller and Wood Group were performing contract work for Helis in Louisiana.[5]  Plaintiffs contend that, in the course of that work, a Wood Group employee, Luigi Malta (who is not a party here), suffered a personal injury, when carbon dioxide cylinders he was offloading from a vessel began to discharge violently.[6]

On February 8, 2013, Malta filed suit against Hiller and Helis in state court, seeking damages.[7]  Plaintiffs allege that the state court found Hiller solely at fault for Malta's injuries and that it entered a judgment against Hiller.[8]  Plaintiffs assert that AGCS paid Hiller's defense cost for the state court proceeding, and that AGCS has become partially subrogated to Hiller's rights to recover.[9]

---

[4]     *Id.* at 1, 7 ¶ 13.

[5]     *Id.* at 8 ¶ 16.

[6]     R. Doc. 12-5 at 2 ¶¶ V-VI.

[7]     R. Doc. 12 at 8 ¶ 17.

[8]     *Id.* at 9 ¶ 20.

[9]     *Id.* at 10 ¶ 23.

## B.    The Contract Dispute

Plaintiffs allege that they are third-party beneficiaries to a Master Service Agreement (MSA) between defendants Wood Group and Helis.[10] Under the MSA, plaintiffs allege, Wood Group agreed to defend, indemnify, and hold harmless Hiller for all claims of bodily injury brought by Wood Group's employees.[11]  The relevant provision in the MSA indicates as follows:

> [Wood Group] agrees to RELEASE, DEFEND, INDEMNIFY, and HOLD HARMLESS [Helis] . . . from and against any and all claims, losses and expenses . . . arising out of or related to bodily injury or death of, or damage to property of, [Helis] . . . or its subcontractors, or its or their employees . . . . The indemnity obligations set forth in this Section shall include [Helis] or any member of *Company Group*.[12]

Although the above provision does not name Hiller or AGCS specifically, plaintiffs allege that they are members of "Company Group."[13] Company Group, according to plaintiffs, is a designation that includes Helis contractors, and plaintiffs contend that Hiller is a contractor for Helis.[14]  In its capacity as an alleged member of Company Group, Hiller contends that it twice sought defense and indemnity from Wood Group after Malta's alleged

---

[10]     *Id*. at 6 ¶ 11.

[11]     *Id*. at 4-6 ¶¶ 9-11; R. Doc. 12-2 at 4.

[12]     R. Doc. 12-2 at 4 (emphasis added).

[13]     R. Doc. 12 at 5 ¶ 11.

[14]     *Id*.  The MSA indicates that Helis's "contractors" are included in the designation "Company Group."  R. Doc. 12-2 at 4.

injury, but that Wood Group, on behalf of itself and ACE, denied Hiller's request on both occasions.[15]

Plaintiffs allege that the indemnification process works as follows under the MSA: First, Wood Group is required to name Company Group as an insured on Wood Group's insurance policies, including on the ACE policy.[16]  The relevant provision in the MSA indicates:

> All insurance policies of [Wood Group] . . . shall, as respects liabilities assumed by [Wood Group] . . . name Company Group as additional insured . . . on a broad form basis . . . .[17]

Second, plaintiffs allege that Wood Group is responsible for generating a bill that represents the total cost of extending coverage to Company Group.[18] The MSA provides:

> At each subsequent renewal of [Wood Group's] insurances, [Wood Group] will advise [Helis] as respects the amount of the premium required for such extensions and arrange to have [Helis] billed for the appropriate premium by their insurers (or their agent or representative).  [Wood Group] warrants that such amount constitutes the full cost of extending such insurance protection to Company Group. . . .
>
> [Wood Group] will arrange to have [Helis] billed for that premium by [Wood Group's] insurers (or their agent or representative), and [Wood Group] will advise [Helis] prior to

---

[15]    R. Doc. 12 at 9-10 ¶¶ 19, 24.

[16]    *Id*. at 5 ¶ 10.  Plaintiffs contend that, at all material times, Wood Group was insured by defendant ACE American Insurance Company (ACE).  *Id*. at 7 ¶ 13

[17]    R. Doc. 12-2 at 7.

[18]    R. Doc. 12 at 6 ¶ 12.

commencing any Work in Louisiana, or offshore Louisiana if such premium will be in excess of $250.[19]

Third, plaintiffs allege that, Helis, and not Wood Group, must pay the resulting premium. The MSA states as follows:

> [Wood Group] and [Helis] agree that as respects all Work performed in Louisiana, or offshore Louisiana, [Helis] (on behalf of Company Group as defined in Section 5.1) will pay to [Wood Group's] insurers (or their agent or representative) the premium required by their insurer for extending all of [Wood Group's] insurance policies to include coverage for Company Group as required under this Agreement . . . .[20]

In 2012, plaintiffs contend Helis was presented with the bill that purported to extend coverage to Company Group and that Helis paid the premium.[21] But plaintiffs allege that the amount Helis paid was insufficient to insure all of Company Group.[22]

Plaintiffs allege various breach-of-contract claims against both Wood Group and Helis. Against Wood Group, Plaintiffs allege that Wood Group is in breach because it denied Hiller's demand for defense, indemnity, and insurance coverage after the state court litigation.[23] In the alternative, plaintiffs allege that, to the extent Wood Group failed to name Company

---

[19]   *Id.* at 7.
[20]   *Id.*
[21]   R. Doc. 12 at 7 ¶ 15.
[22]   *Id.* at 7-8 ¶ 15A.
[23]   R. Doc. 12 at 12 ¶ 32.

Group on its insurance policy, or failed to present an adequate bill to Helis, Wood Group is liable for breach of contract.[24]

Plaintiffs assert one breach of contract claim against Helis. Plaintiffs allege that Helis breached the MSA by not paying the premium in an amount necessary to insure all of Company Group.[25]  Plaintiffs allege that Helis "knew or should have known" that the bill presented to it was for a premium that would insure only Helis on Wood Group's insurance policies, and not Company Group.[26]  Helis now moves to dismiss the breach of contract claim against it, and the Court considers Helis's motion below.[27]

---

[24]   R. Doc. 12 at 12 ¶¶ 33-33A.

[25]   R. Doc. 12 at 13 ¶ 34.

[26]   R. Doc. 12 at 8 ¶ 15B.

[27]   Plaintiffs responded to Helis's first motion to dismiss with an Amended Complaint.  "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts by reference the earlier pleadings." *MacFarland v. Walker*, 214 F.3d 1349 (Table), at *1 (5th Cir. 2000) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)).  Accordingly, the Amended Complaint is the operative complaint, as it does not adopt by reference any other pleadings. Helis' first motion to dismiss is moot. *See Pettawa v. Nat'l Recovery Solutions, LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (holding that, when faced with an amended complaint while a motion to dismiss is pending, a district court may dismiss the pending motion as moot).  The Court considers Helis' second motion to dismiss, which incorporates by reference all of the arguments Helis made in its first motion to dismiss, and responds to the allegations in the Amended Complaint.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'"  *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*,

78 F.3d 1015, 1017-18 (5th Cir. 1996)).  On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

## III.   DISCUSSION

### A.   Choice of Law

Plaintiffs argue that general federal maritime law governs this dispute.[28]  The basis for this choice of law, plaintiffs argue, is that the MSA is a maritime contract, conferring admiralty and maritime jurisdiction over this dispute under 28 U.S.C. § 1333.[29]  *See Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010) ("Courts of admiralty have jurisdiction over a contract dispute if the contract at issue is a maritime contract."); *see also Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 22-23 (2004) ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls to contract interpretation.").  Alternatively, plaintiffs assert that this Court has diversity jurisdiction over this dispute under 28 U.S.C. § 1332,[30] and the MSA contains a choice-of-law

---

[28]    R. Doc. 23 at 15.
[29]    *Id.*
[30]    R. Doc. 12 at 2 ¶ 3.

provision requiring the application of general maritime law.  Specifically, the MSA provides:

> This Agreement shall be governed by the General Maritime Laws of the United States TO THE MAXIMUM EXTENT PERMITTED BY LAW.  TO THE EXTENT THAT THE GENERAL MARITIME LAWS ARE NOT PERMITTED BY APPLICABLE LAW TO APPLY, THE LAWS OF THE STATE OF TEXAS . . . . [31]

Helis does not take issue with the application of general federal maritime law to its motion.  Rather, Helis's position is that, under any applicable law, plaintiff does not adequately allege a breach-of-contract claim against it.[32]

For the purposes of deciding this motion, the Court will apply general maritime law, and it need not decide whether the MSA is a maritime contract.  Plaintiffs adequately allege, and Helis does not dispute, that the requirements for diversity jurisdiction are satisfied under 28 U.S.C. § 1332.[33] *See Hart v. Int'l Paper Co.*, 53 F.3d 1281, 1281 (5th Cir. 1995) (per curiam) (noting that because "there was complete diversity . . . we need not reach the alternative argument that there was federal question jurisdiction").  And as

---

[31]   R. Doc. 12-2 at 10.

[32]   R. Doc. 7-1 at 5 n.22.

[33]   R. Doc. 12 at 2 ¶ 3.  For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants.  *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  Plaintiffs allege that there is complete diversity, stating the citizenship of all the parties involved and alleging that the amount in controversy exceeds $75,000.  R. Doc. 12 at 2 ¶ 3.

a federal court sitting in diversity, the Court must give effect to the choice-of-law provision in the MSA. *See Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010) (noting that a federal court sitting in diversity, applies the choice-of-law principles of the forum state when interpreting a contract); *see also Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. App. 1 Cir. 2012) (noting that, in Louisiana, choice-of-law provisions are "presumed valid until [they are] proved invalid"). No party contends that general maritime law is not permitted to apply or that the choice of law provision is unenforceable.[34] Accordingly, the Court proceeds applying general maritime law.

---

[34] In some diversity cases, the Fifth Circuit has applied Louisiana Law to contracts involving the production of oil, notwithstanding the presence of a choice-of-law clause. *In re Larry Doiron*, 879 F.3d 568, 571 n.10 (5th Cir. 2018). But the reason for this has been the application of the Louisiana Oilfield Anti-Indemnity Act (LOIA), La. Rev. Stat. 9:2780, *et seq. Id.* (citing *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 254 (5th Cir. 2001)). Applying the LOIA, "courts generally hold that contractual provisions requiring the contractor to extend its insurance coverage to cover the principal's acts of negligence or fault are void . . . ." *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 481 (5th Cir. 2002). Here, the LOIA is inapplicable because of the exception the Fifth Circuit recognized in *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994). R. Doc. 23 at 15. In *Marcel*, the Fifth Circuit held that "when the principal pays the entire cost of its own insurance coverage by securing an endorsement naming it as an insured in the contract or policy, the purposes of the LOIA are not frustrated, and the insurance coverage is valid and enforceable." *Rogers*, 308 F.3d at 481. Helis agrees that *Marcel* applies. R. Doc. 7-1 at 3.

### D.   Breach of Contract

Nothing in plaintiffs' Amended Complaint, or its attachments, suggests that Helis breached the MSA.  In maritime cases, a plaintiff alleging breach of contract must demonstrate the following elements: "'(1) contract; (2) breach of that contract, and (3) damages.'"  *Mid-Gulf Shipping Co. Inc. v. Energy Subsea LLC*, 472 F. Supp. 3d 318, 324 (E.D. La. 2020) (quoting *FEC Heliports, LLC v. Hornbeck Offshore Operators, LLC*, No. 15-4827, 2016 WL 5678557, at *5 (E.D. La. Oct. 3, 2016)).

A contract "'governed by federal maritime [law,] should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'"  *LLOG Exploration Co. v. Signet Maritime Corp.*, 673 F. App'x 422, 425 (5th Cir. 2016) (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984)).  "'Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties.'"  *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (quoting *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997)).  "Where 'the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and [the court] will construe the contract as a matter of law.'"  *Breaux*, 562 F.3d at 364 (quoting *Weir*, 123 F.3d at 286).

The MSA provides:

> [Wood Group] will arrange to have [Helis] billed for th[e] premium by [Wood Group's] insurers (or their agent or representative), and [Wood Group] will advise [Helis] prior to commencing any Work in Louisiana, or offshore Louisiana if such premium will be in excess of $250. . . .

> At each subsequent renewal of [Wood Group's] insurances, [Wood Group] will advise [Helis] as respects the amount of the premium required for such extensions and arrange to have [Helis] billed for the appropriate premium by their insurers (or their agent or representative).  [Wood Group] warrants that such amount constitutes the full cost of extending such insurance protection to Company Group.[35]

The above provisions place an obligation on Wood Group to "arrange to have [Helis] billed for the *appropriate* premium by their insurers."  Further, the contract provides that Wood Group "warrants" that the amount of the bill "constitutes the full cost of extending such insurance protection to Company Group."

Helis's obligation under the MSA is as follows:

> [Helis] (on behalf of Company Group as defined in Section 5.1) will pay to [Wood Group's] insurers (or their agent or representative) the premium required by their insurer for extending all of [Wood Group's] insurance policies to include coverage for Company Group . . . .[36]

---

[35]   R. Doc. 12-2 at 7.

[36]   *Id.*

Read together, nothing in the MSA indicates that Helis's obligation extends any further than paying the premium as-billed by Wood Group or its insurers. *See Breaux*, 562 F.3d at 364 (providing that contracts governed by federal maritime law must be "read as a whole"). For example, nothing indicates that Helis is obligated to communicate with Wood Group's insurers, or that Helis must verify that the premium is sufficient to cover Company Group. And in the Amended Complaint, plaintiffs admit that "Helis, on behalf of Company Group, was presented the bill, and purportedly paid the insurance premium" to extend Coverage to Company Group.[37] Because plaintiffs fail to allege that Helis breached any obligation under the MSA, the Court finds that plaintiffs fail to state a claim against Helis for breach of contract.

Plaintiffs' attempt to save their claim by alleging that Helis "knew or should have known" that the bill would not extend coverage to Company Group.[38] Specifically, plaintiffs argue that the bill Helis paid was for a premium that would insure only Helis on Wood Group's policies.[39] In support of this assertion, plaintiffs attach a sample endorsement to the

---

[37]    R. Doc. 12 at 7 ¶ 15.

[38]    *Id.* at 8 ¶ 15B.

[39]    *Id.*

Amended Complaint.[40]  The sample endorsement is addressed to "Wood Group USA, Inc.,"[41] and it lists Helis as the entity under the category "additional insured."[42]   Beneath Helis's name, the sample endorsement provides:

> WHO IS AN INSURED (Section II) is amended to include as an additional insured any person or organization to whom you are obligated, in connection with your business, by written contract or written agreement, executed prior to the date of loss, to provide insurance such as is afforded by this policy, but not for broader coverage or greater limits of liability than is required by said contract or agreement and in no event, for broader coverage or greater limits of liability than is otherwise provided by the policy.  If other insurance is available to an insured we cover under this endorsement or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.[43]

The sample endorsement does not save plaintiffs' claim.  There is no evidence that the sample endorsement, which is addressed to Wood Group, was ever sent to Helis.  Nor is it established that it is the actual endorsement.  Further, the above excerpt—the meaning of which plaintiffs do not explain— indicates that, although Helis is listed as an additional insured, coverage extends beyond those entities that are specifically enumerated.  In any event,

---

[40]   R. Doc. 12-4.
[41]   *Id.* at 1.
[42]   *Id.* at 2.
[43]   *Id.*

none of this evidence is relevant to the question of whether plaintiff adequately alleges that Helis breached its obligation to pay the as-billed premium.

Plaintiffs raise one last argument in an effort to save their claim. Plaintiffs contend that, under general maritime law, liability for breach of contract is not based upon fault.[44]  That is, even if Helis was not "at fault" for the insufficient premium it paid, Helis is still liable for not covering Company Group.[45]  Plaintiffs cite *CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 140 S. Ct. 1081, 1089 (2020) for this argument.[46]

In *Frescati*, the U.S. Supreme Court considered a maritime contract in which included a "safe-berth clause."  *Id.* at 1085.  That clause, the *Frescati* court held, obligated the petitioners to select a "safe berth" around an abandoned oil tanker.  *Id.* Petitioners' vessel nonetheless allided with the oil tanker, causing hundreds of thousands of gallons of crude oil to spill into the Delaware River.  *Id.*  The *Frescati* court found that petitioners breached the safe-berth clause in the course of the allision. Rejecting petitioners' argument regarding "due diligence in the selection of a berth," the *Frescati* court observed that "[u]nder elemental precepts of contract law, an obligor

---

[44]   R. Doc. 23 at 10.
[45]   *Id.* at 11.
[46]   *Id.*

15

is 'liable in damages for breach of contract even if he is without fault.'" *Id.* at 1089 (citing Second Restatement of Contracts, 309 (1979)).

In *Frescati*, petitioners were found in breach of the contract and could not avoid liability, notwithstanding alleged efforts to exercise "due diligence." Here, plaintiffs have not even alleged that Helis breached the MSA in the first instance, through its "fault" or otherwise. Because plaintiffs fail to state a claim for breach of contract against Helis, the Court grants Helis's motion to dismiss. Plaintiffs' breach-of-contract claim against Helis is dismissed with prejudice.

## III.   CONCLUSION

For the foregoing reasons, Helis's second motion to dismiss is GRANTED. Helis's first motion to dismiss is MOOT.

New Orleans, Louisiana, this   17th   day of March, 2021.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE